UNITED STATES, Appellee

v.

Robert D. MAYNARD Jr., Specialist
U.S. Army, Appellant

No. 07-0647

Crim. App. No. 20060121

United States Court of Appeals for the Armed Forces

Argued February 6, 2008

Decided May 6, 2008

ERDMANN, J., delivered the opinion of the court, in which
EFFRON, C.J., and BAKER, STUCKY, and RYAN, JJ., joined.

Counsel

For Appellant:  Captain William Jeremy Stephens (argued);
Colonel Christopher J. O'Brien, Lieutenant Colonel Steven C.
Henricks, and Major Teresa Lynn Raymond (on brief); Major Fansu
Ku and Captain Seth A. Director.

For Appellee:  Captain Michael G. Pond (argued); Colonel John W.
Miller II, Major Elizabeth G. Marotta, Captain Michael C. Friess
(on brief); Captain Mark E. Goodson.

Military Judge:  Mark L. Toole

**This opinion is subject to revision before final publication.**

United States v. Maynard Jr., No. 07-0647/AR

Judge ERDMANN delivered the opinion of the court.

Specialist Robert D. Maynard Jr. pled guilty to absence without leave (AWOL) under Article 86, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 886 (2000), and was convicted by a military judge sitting alone.  Following a pre-sentencing hearing, a panel of officers and enlisted members sentenced Maynard to ten months' confinement, reduction to the lowest enlisted grade, partial forfeitures for the period of confinement, and a bad-conduct discharge.  The United States Army Court of Criminal Appeals affirmed the findings and sentence.  United States v. Maynard, No. ARMY 20060121 (A. Ct. Crim. App. Mar. 14, 2007).

We granted review to determine whether the military judge committed plain error in permitting the members to consider Maynard's alleged anti-war and anti-American views as evidence in aggravation for sentencing purposes.  65 M.J. 442 (C.A.A.F. 2007).  We determine that even if there was error, it was not plain or obvious and affirm the Court of Criminal Appeals.

Background

Maynard's unit was given a "block leave" for a two-week period.  Maynard did not return to Fort Irwin at the conclusion of this block leave.  He voluntarily returned to Fort Irwin after a thirteen-month absence.  During the pre-sentencing hearing, just prior to the beginning of the Government's case in

aggravation, the defense submitted a "good soldier" packet that the military judge entered into evidence. The military judge also admitted a mental health record reflecting Maynard's diagnosis for Dysthymic Disorder.[1]

In its case in aggravation, the Government called First Sergeant Miguel Guerrero. He was Maynard's platoon sergeant when the unit commenced the two-week block leave. After describing Maynard's duty performance, Guerrero stated that when Maynard failed to return from leave he inventoried Maynard's room. Guerrero testified that the only things remaining in the room were:

> TA 50, military issue gear, and on the three-drawer chest I identified a display of personal items, one being a pin that said, "I hate my job." And then a piece of paper with some Anti-American propaganda, "I hate Bush, the Commander-in-Chief" and "Fahrenheit 9/11" stuff.

Defense counsel did not object to this testimony, nor did the military judge give any limiting instructions to the panel on this testimony. On recross-examination, defense counsel questioned Guerrero on this aspect of his testimony. Guerrero testified that, prior to Maynard's AWOL, he had not heard Maynard make anti-American statements or display any images or

---

[1] According to Maynard's mental health record, Dysthymic Disorder results in periods of depressed moods that can be characterized by poor appetite or overeating, insomnia or hypersomnia, low energy or fatigue, low self-esteem, poor concentration or difficulty making decisions, and feelings of hopelessness.

signs about President Bush.  In response to a member's question,
Guerrero stated that there were no additional items in Maynard's
room when it was inventoried.

Staff Sergeant Brian K. Nelson testified for the defense
during its case in mitigation.  He was Maynard's platoon leader
after Maynard returned to Fort Irwin.  He described Maynard as a
"good soldier" and gave examples of Maynard's above-standard
work.  Nelson also expressed a desire to retain Maynard in the
unit.  On cross-examination, trial counsel had the following
exchange with Nelson:

Q.   You have had some discussions with Maynard, haven't
     you?

A.   Yes, I have.

Q.   In fact, you had a discussion with him last week.

A.   Yes, sir.

Q.   And it was a political discussion?

A.   Yes, it was.

Q.   And you were telling Maynard your views on the Iraq
     situation.

A.   Yes, sir.

Q.   And Maynard said something to you, didn't he?

A.   Yes, he did.

Q.   What did he say to you?

A.   He said that the President lied to him.

Q.   Okay.  Staff Sergeant Nelson, does a good soldier
     call his Commander-in-Chief a liar?

A.   He has his own opinion, sir, that is the way I
     feel.  I mean, he -- I don't think it's probably a
     good idea to do that, but I mean he is allowed to
     have his own opinion.  That is what the country is
     about, you know, that is what we fought for, for
     him to be able to have his own opinion.

Q.   Fair enough.  Thank you, Staff Sergeant Nelson.

Defense counsel did not object to this line of questioning and the military judge did not give a limiting instruction to the panel.

Maynard made an unsworn statement with the assistance of counsel.  In that statement he addressed the political discussion testified to by Nelson.  He stated that while he enjoyed politics and liked to have conversations about politics, his feelings about the President went no further than conversation.  He stated that he was "not anti-American, by no means" and agreed that he was not involved with "staging any rallies or any flags or any of those things."

Maynard also addressed what prompted his decision to go AWOL.  He stated he "could not handle the stress levels" that he attributed to Guerrero's leadership style.  He also stated that, since his return, he had received treatment at the post's mental health unit where he was diagnosed with Dysthymic Disorder.  He stated he experienced low self-esteem, difficulty making decisions, and feelings of hopelessness prior to going AWOL.  He stated he had been "very angry, very moody, depressed a lot for the better part of my adult life."  He reported that his

treatment had helped him a great deal and he felt "a lot different."

During argument on sentencing, trial counsel referred to Guerrero's testimony regarding the materials found in Maynard's room and Maynard's political statements to Nelson. Trial counsel stated: "[T]he accused, you know, he said, that he never went further than that in making those [political] statements. But, we know that's not true. We know that he went AWOL, and then he left something behind in his room that says otherwise." Defense counsel did not object to this statement, but did request an Article 39(a), UCMJ, 10 U.S.C. § 839(a)(2000), session at the conclusion of trial counsel's argument.

In the Article 39(a), UCMJ, session, defense counsel expressed concern over trial counsel's closing argument because he placed "inequitable emphasis on uncharged misconduct." However, defense counsel stated he did not want to object at that time, "because of the issue of placing an emphasis on it that the members would focus on." Defense counsel went on to note three instances of alleged uncharged misconduct[2] and stated he was in an "awkward position" because a limiting instruction would only draw the members' attention to the problematic parts

---

[2] These included the reference to the unit's deployment to Iraq, the "political" items found in Maynard's room, and the limited amount of other personal belongings left in his room.

of the trial counsel's argument.  The defense counsel ultimately did not make an objection nor did he request a limiting instruction.

The military judge found that the three instances noted by the defense were properly admitted aggravation evidence and thus trial counsel's comments on those instances was proper.  The military judge went on to instruct the members as follows:

> Although you must give due consideration to all matters in mitigation and extenuation, as well as those in aggravation, you must bear in mind that the accused is to be sentenced only for the offense of which he has been found guilty.  The offense of which he has been found guilty is AWOL, and that is the only offense that is before you and the only offense for which you may impose punishment.

## Discussion

When the defense fails to object to admission of specific evidence, the issue is waived, absent plain error.  United States v. Hardison, 64 M.J. 279, 281 (C.A.A.F. 2007); United States v. Powell, 49 M.J. 460, 463-65 (C.A.A.F. 1998); see Rule for Courts-Martial (R.C.M.) 905(e).  The plain error standard is met when "(1) an error was committed; (2) the error was plain, or clear, or obvious; and (3) the error resulted in material prejudice to substantial rights."  Hardison, 64 M.J. at 281. Maynard bears the burden of demonstrating that the three prongs of the test are met.  Id.

Maynard argues that the military judge erred when he admitted evidence of Maynard's political views and allowed the

7

members to consider this evidence as aggravation evidence for sentencing, that this error was plain or obvious, and prejudiced his substantial rights. He contends that evidence of his political beliefs does not directly relate to the AWOL offense and therefore was not proper aggravation evidence. He also argues that even if the evidence did directly relate to the AWOL, it still must meet the standards of Military Rule of Evidence (M.R.E.) 403.[3] At oral argument, appellate defense counsel narrowed the alleged error in this case to the military judge's failure to sua sponte rule that Guerrero's testimony regarding the "anti-war" or "anti-American" material in Maynard's room was improper aggravation evidence. We will limit our inquiry accordingly.

The Government responds that the military judge did not err because the evidence was proper aggravation evidence as it directly related to Maynard's attitude towards his crime and his lack of rehabilitative potential. The Government also argues that the evidence was properly admissible to rebut Maynard's explanation for his AWOL, as presented in the two defense exhibits.

Even if we were to assume without deciding that Maynard is correct as to his allegation of error, his burden is to show

---

[3] As there was no objection and the military judge did not raise the issue sua sponte, no M.R.E. 403 balancing test was conducted.

error that was clear and obvious.  Under the circumstances of this case, we cannot conclude that Guerrero's testimony that Maynard had left behind only a few personal items when he departed for a two-week leave so obviously lacked a direct relationship to the AWOL offense that the military judge was obliged to take sua sponte action.  This is true even though Guerrero described some of the items as "[a]nti-American propaganda" Guerrero testified that when he went to look for Maynard in the barracks he found "a display of personal items" and went on to describe the items he found.  This testimony could be read to suggest that Maynard intentionally left the articles in question as "a display" for those who would be investigating his disappearance.

Indeed, when this testimony was elicited from Guerrero, the defense attorney did not object on any grounds.  He chose to address the alleged anti-war and anti-American testimony by eliciting testimony from Guerrero on recross-examination that prior to the AWOL, Guerrero had not heard Maynard make any anti-American statements nor seen him display any images or signs about President Bush.

In the Article 39(a), UCMJ, hearing after trial counsel's sentencing argument, the defense counsel noted his concern to the military judge that trial counsel's argument placed "inequitable emphasis on uncharged misconduct."  Presented with

the opportunity to object to the trial counsel's argument, to move for a mistrial, to ask for a limiting instruction, or to propose any other solution, the defense counsel made a tactical decision not to object in open court or request a limiting instruction because he did not want to emphasize the testimony. The defense tactic at trial not to object but rather cross-examine Guerrero was consistent with the defense counsel's response to trial counsel's closing argument -- by not objecting the defense counsel did not emphasize the testimony.

Maynard has failed to establish on appeal that the admission of this testimony was so obviously erroneous, if erroneous at all, that the military judge can be faulted for taking no action and, like defense counsel, allowing its admission without comment. Because we find that any error was not plain or obvious, we do not address the prejudice prong.

## Decision

The decision of the United States Army Court of Criminal Appeals is affirmed.

10