UNITED STATES, Appellee

v.

Jamaal A. LEWIS, Specialist
U.S. Army, Appellant

No. 10-0484

Crim. App. No. 20061070

United States Court of Appeals for the Armed Forces

Argued December 15, 2010

Decided February 15, 2011

EFFRON, C.J., delivered the opinion of the Court, in which
BAKER, ERDMANN, STUCKY, and RYAN, JJ., joined.


Counsel


For Appellant:  William E. Cassara, Esq. (argued); Captain
Michael E. Korte (on brief); Captain Kristin McGrory.


For Appellee:  Captain Madeline F. Yanford (argued); Major
Christopher B. Burgess, Captain Stephen E. Latino, and Captain
Benjamin M. Owens-Filice (on brief).



Military Judge:  Debra L. Boudreau



THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION.

United States v. Lewis, No. 10-0484/AR

Chief Judge EFFRON delivered the opinion of the Court.

A general court-martial composed of officer and enlisted members convicted Appellant, contrary to his pleas, of two specifications of attempted robbery with a firearm, two specifications of murder while attempting to perpetrate a robbery, and aggravated assault with a firearm, in violation of Articles 80, 118, and 128, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 880, 918, 928 (2006). The sentence adjudged by the court-martial and approved by the convening authority included a dishonorable discharge, confinement for life, and reduction to the lowest enlisted grade. The United States Army Court of Criminal Appeals affirmed. United States v. Lewis, No. ARMY 20061070, (A. Ct. Crim. App. May 5, 2010) (unpublished).

On Appellant's petition, we granted review of the following issue:

> WHETHER APPELLANT'S RIGHT TO DUE PROCESS WAS VIOLATED
> WHEN THE TRIAL COUNSEL ASKED A DEFENSE EXPERT WHETHER
> HE FOUND EXCULPATORY EVIDENCE, AND ARGUED TO THE
> MEMBERS THAT THE DEFENSE EXPERT FAILED TO FIND
> EVIDENCE SUGGESTING ANYONE OTHER THAN APPELLANT
> COMMITTED THE OFFENSES.

For the reasons set forth below, we hold that the military judge did not err in permitting the prosecution's questioning and argument, and we affirm.

2

## I.  BACKGROUND

The granted issue concerns the prosecution's cross-examination of a defense expert witness and the prosecution's rebuttal during closing argument.  Part A provides background concerning the underlying charges and investigation.  Part B describes the central theories offered by the parties at the outset of the trial.  Part C describes the circumstances involving the questioning of the defense expert.  Part D describes the pertinent aspects of the closing argument.

### A.  THE INCIDENTS AND THE INVESTIGATION

The charges against Appellant stemmed from two incidents involving the use of a firearm in the course of attempted robbery, assault, and murder.  In the first incident, a drive-by shooting, a civilian suffered a gunshot wound.  The second incident, an attempted robbery, resulted in the shooting deaths of a servicemember and a civilian.

During the subsequent investigation, law enforcement officials focused on four individuals:  Appellant; the driver of the car in the first incident involving the drive-by shooting; the driver of the car in which Appellant fled the scene of the second incident involving the double homicide; and the owner of the car in which part of the murder weapon was found.  Appellant provided a statement to investigators denying culpability.  The three other individuals made statements implicating Appellant,

and subsequently testified for the prosecution at trial under grants of immunity.

The primary evidence against Appellant developed in the investigation, later produced at trial, consisted of statements by these three witnesses describing Appellant's act of shooting during the drive-by, Appellant's expression of intent to rob the victims of the murder, his efforts to dispose of the weapon in Puget Sound, and his repeated confessions regarding both events. Additional evidence included the testimony of eyewitnesses who supported portions of the lead witnesses' testimony, and evidence concerning the DNA of a victim found on the recovered weapon.

During the investigation, two of the witnesses led authorities to the location where the rest of the weapon had been thrown into Puget Sound. Special Forces divers recovered parts of the weapon from that location. Ballistic evidence linked the pistol to both shootings. The Government obtained evidence showing that Appellant had purchased the weapon and used it at a firing range at least once.

## B. OPENING STATEMENTS

At the beginning of the trial, the military judge advised the panel that the Government bore the burden of proving the accused's guilt by legal and competent evidence. The military judge asked the members of the panel, "Does each member

understand that the burden of proof to establish the accused's guilt rests solely upon the prosecution and the burden never shifts to the defense to establish the accused's innocence?" The military judge then followed up by asking: "Does each member understand, therefore, that the defense has absolutely no obligation to present any evidence or to disprove the elements of the offenses?" The panel members responded in the affirmative to both questions.

The prosecution's opening statement summarized the evidence, noting that the panel would hear testimony evidence from the investigators, forensic experts, and eyewitnesses. The Government emphasized it would rely upon the recovered murder weapon and incriminating statements made by Appellant to other witnesses.

Defense counsel emphasized in his opening sentence that the defense would not only challenge the sufficiency of the Government's proof, but also that "we are going to prove to you that Specialist Lewis is not guilty of these offenses." Defense counsel added: "As the judge explained to you, we don't have a burden, but we are going to bring forward evidence and we are going to prove to you that he is not guilty."

After stating that the defense would demonstrate the bias and unreliability of the prosecution's witnesses, defense counsel stated: "We're then going to talk about the police

investigation that was done in this case."  After noting that

"the police did some good police work," he added:  "But the

evidence is going to make very clear that they did some very,

very poor work as well."  At that point, he summarized the

defense view of deficiencies in the investigation, asserting

that the police focused unduly on Appellant without examining

other possibilities, that they performed an incomplete

examination of the alleged "getaway car," and that they

performed forensic tests only on Appellant and his clothes but

not on any of the other participants, and that fingerprints were

checked only against Appellant and not against the others.

Defense counsel again emphasized:  "So we're going to show you,

through evidence, the holes and mistakes and faulty pointing --

faulty direction of the police investigation."

In the balance of the opening statement, defense counsel

promised to provide "some affirmative evidence of [their] own."

Among other matters, counsel discussed the lack of blood, gun

residue, or DNA tied to Appellant.

### C.  EXAMINATION OF THE EXPERT WITNESS

The prosecution's case proceeded as outlined in trial

counsel's opening statement.  Defense counsel subjected the

prosecution's law enforcement witnesses to vigorous cross-

examination about conduct and results of their investigative

activities.  Throughout the trial, defense counsel attacked the

credibility of the chief Government witnesses and seized on the lack of direct physical evidence, arguing that the Government's investigation had focused on Appellant to the exclusion of other potential suspects and was therefore unreliable.

After the prosecution rested, the defense presented its case, including testimony in furtherance of the promise in defense counsel's opening statement to provide affirmative evidence of Appellant's innocence. The defense presentation included testimony from James Pex, offered by the defense as a qualified expert on crime scene investigation, blood spatter analysis, and various forensic laboratory procedures.

The testimony from Mr. Pex focused primarily on the components of proper investigative procedures. He also testified concerning the results of his own examination of the evidence, including the vehicles in the case and the victim's clothing. He provided detailed testimony regarding his evaluation of the blood spatter in the murder victims' vehicle. His testimony included numerous slides containing his views on the appropriate steps in an investigation and his independent findings with respect to the evidence in the case.

The prosecution's cross-examination of Mr. Pex included the following question: "During the course of your investigation, you didn't find anything that you would consider exculpatory of Specialist Lewis, did you?" After Mr. Pex answered in the

negative, the prosecution then asked: "Conversely, you didn't find anything that would make you think that somebody else was the actual shooter?" Mr. Pex responded: "I couldn't say one way or another."

Following examination by the parties, the military judge presented a panel member's question to Mr. Pex concerning his examination of the vehicles involved in the incident. After Mr. Pex described the vehicles that he had examined, the military judge narrowed the scope of vehicles at issue and asked whether Mr. Pex had found anything of "evidentiary significance" in the vehicles. Mr. Pex described his investigation of the vehicles and answered the question in the negative. The military judge then asked the panel member whether the interchange had answered the member's question, and the member replied in the affirmative. The defense counsel did not object to the questions from the prosecution, the panel member, or the military judge.

## D. CLOSING ARGUMENTS

The prosecution's closing statement focused on the evidence presented during the Government's case. The prosecution did not offer any pertinent comments regarding the granted issue.

Defense counsel, during closing argument, reminded the panel that his opening statement had promised that the defense would make an affirmative showing of Appellant's innocence. He

further assured the panel that the defense had delivered on that promise during its presentation of the evidence. Early in the closing argument, defense counsel told the panel, "Listen, we set out to prove to you that Specialist Lewis is not guilty. I believe we did that and I'm going to explain to you how . . . ." Defense counsel then provided a detailed critique of the prosecution's case, focusing on witness credibility, inconsistencies, and the lack of direct physical evidence. After stating that "the government has failed," defense counsel then said, "So what ought to happen is I ought to just be done, just shut up now, it's been long enough and you probably all would appreciate that." He decided, however, to not rest on his critique of the prosecution's case, adding, "But I can't help myself. I'm going to go on. So brace yourselves."

He followed this by stating that it would be sufficient for the panel to conclude that the prosecution had not met its burden, and that it was the panel's duty to do so. Then he said:

> But listen, I want to give you more. Some affirmative evidence of innocence. Some affirmative evidence of innocence. [Sic] Because you see, I could just -- like I said before, I could just keep my mouth shut. The government's case has already failed, but here's -- we're going to go on the offense now and try to give you something to hang you hats on. We're going to try. . . . I mean, we're trying to give you some affirmative evidence of innocence.

9

Counsel proceeded to discuss evidence that the defense highlighted as demonstrating deficiencies in the investigation. He also pointed to the lack of DNA, fingerprints, or other physical evidence linking Appellant to the crimes, stating, "[t]he absence of any link is significant evidence in and of itself." He added that the Government had used numerous forensic methods to examine the accused, but had failed to examine other potential suspects with the same rigor. He then stated:

> They looked at Lewis in every discipline that they understand and they found nothing. They did not look at these other folks. They didn't even make pictures of them. That is affirmative evidence of innocence, the evidence that was transferred from the crime scene to the killer was never found because it was never looked for in the right place.

On rebuttal, the prosecution offered an observation regarding the testimony from Mr. Pex, the defense's expert witness. Trial counsel stated, "The defense's own witness, their expert witness, Mr. Pex went through every single piece of evidence that [law enforcement officials] had processed looking to find anything that would be exculpatory." Counsel then argued, "After his long process, he did not find anything that would exclude [Appellant] as the shooter." Defense counsel offered no objection.

After closing arguments, the military judge gave the following instruction: "The burden is on the prosecution to prove each and every element of each offense beyond a reasonable doubt." The military judge further instructed the jury that "the burden of proof to establish guilt of the accused beyond a reasonable doubt is on the government. The burden never shifts to the accused to establish innocence or to disprove the facts necessary to establish each element of each offense." Appellant did not request any other instructions regarding the burden of proof or prosecutorial comment.

## II. DISCUSSION

On appeal, Appellant contends that trial counsel's cross-examination of Mr. Pex and his closing statement both suggested that the defense bore the burden of proof to demonstrate that he was not guilty, thereby violating the Due Process Clause of the Fifth Amendment. In support of this argument, Appellant contends that the questions posed by the military judge to Mr. Pex compounded the problem.

The issue of whether such questioning and comment would constitute a due process violation involves a question of law that we review de novo. See United States v. Moran, 65 M.J. 178, 181 (C.A.A.F. 2007). In the absence of defense objection, we review for plain error. United States v. Maynard, 66 M.J.

242, 244 (C.A.A.F. 2008).  Under the plain error standard an appellant must show, "(1) an error was committed; (2) the error was plain, or clear, or obvious; and (3) the error resulted in material prejudice to substantial rights."  Id.  "An error is not 'plain and obvious' if, in the context of the entire trial, the accused fails to show the military judge should be faulted for taking no action even without an objection."  United States v. Burton, 67 M.J. 150, 153 (C.A.A.F. 2009) (quoting Maynard, 66 M.J. at 245) (quotation marks omitted).

Under the Due Process Clause of the Fifth Amendment, the government must prove a defendant's guilt beyond a reasonable doubt.  United States v. Czekala, 42 M.J. 168, 170 (C.A.A.F. 1995); see also Rule for Courts-Martial (R.C.M.) 920(e)(5)(A) (providing that the "accused must be presumed to be innocent until the accused's guilt is established by legal and competent evidence beyond a reasonable doubt").

An improper implication that the defendant carries the burden of proof on the issue of guilt constitutes a due process violation.  United States v. Mason, 59 M.J. 416, 424 (C.A.A.F. 2004).  The limitation on comments regarding the burden of proof does not apply, however, in circumstances where the defense has the burden of proof on a particular matter, such as an alibi defense.  See United States v. Webb, 38 M.J. 62, 66 (C.A.A.F. 1993).  Likewise, the limitation on comments cannot be used by

12

the defense as both a shield and a sword.  See United States v. Carter, 61 M.J. 30, 33 (C.A.A.F. 2005) (noting that "[u]nder the 'invited response' or 'invited reply' doctrine, the prosecution is not prohibited from offering a comment that provides a fair response to claims made by the defense") (citing United States v. Gilley, 56 M.J. 113, 120-21 (C.A.A.F. 2001)).

When determining whether prosecutorial comment was improper, the statement "must be examined in light of its context within the entire court-martial."  Id.  In the course of reviewing "whether an appellant was deprived of a fair trial by such comments, the question an appellate court must resolve is whether, viewed within the context of the entire trial . . . defense counsel's comments clearly invited the reply."  Gilley, 56 M.J. at 121 (citation and quotation marks omitted).

In the present case, from the outset of defense counsel's opening statement, the defense articulated a strategy expressly promising an affirmative showing of innocence.  In that regard, defense counsel assured the panel that the defense would go beyond demonstrating that the Government had failed to meet its burden of proof, and that the defense would make an affirmative showing of Appellant's innocence.  See supra Part I.B.

As part of that strategy, the defense presented the testimony of an expert witness who criticized the Government's investigation.  In addition, the defense's expert testified as

to the results of his own investigation and analysis of important items of evidence.  See supra Part I.C.  The defense posture and the evidence opened the door to exploration of these matters.  In the context of the defense presentation of evidence from the Pex investigation, the prosecution's questions to Mr. Pex about the results of his investigation fell well within the range of permissible cross-examination.  The question from the panel member, and the ensuing question posed by the military judge both reflected reasonable inquiries based upon the testimony from Mr. Pex about his investigation of the vehicles.

During closing arguments, defense counsel presented a closing statement consistent with the strategy outlined in the opening argument and addressed in the defense evidence.  The closing argument from defense counsel expressly stated that the defense not only had demonstrated the Government's failure to meet its burden, but also that the defense had provided the panel with "affirmative evidence of innocence."  See supra Part I.D.

On appeal, the defense asks us to view the defense statements at trial as nothing more than inartful commentary on the Government's failure to meet its burden of proof which, in that posture, did not open the door to the prosecution's questions and comments.  In this case, however, we are not dealing with a stray comment by the defense.  Here, the defense

14

counsel chose to open the case with a promise of affirmative evidence. After the prosecution completed its case, the defense sought to fulfill that promise by presenting evidence that included testimony from an expert regarding his own investigation.

Defense counsel expressly reminded the members in the closing statement that the defense had presented more than a critique of the Government's case by providing "affirmative evidence of innocence."

In summary, the prosecution could rely on the defense posture and the evidence presented during the defense case as providing the basis for the questions posed to the expert witness. The military judge also could rely on those matters as the basis for posing questions on his own and from the panel. Likewise, during rebuttal of closing argument, the prosecution could rely on the defense counsel's closing argument, which highlighted the earlier defense presentation, as providing the basis for the comments offered by the prosecution in rebuttal.

In evaluating these matters with respect to the granted issue, which involves the burden of proof, we also take into account the instructions provided by the military judge. Here, the military judge provided the members with appropriate guidance and instructions at two important points in the trial. He advised the members at the outset of trial that the

Government bore the burden of proving the accused's guilt by legal and competent evidence, and that the burden would never shift to the accused.  He later provided a similar instruction after closing arguments.  See supra Parts I.A., I.D.

Under the circumstances of this case, the military judge was not obligated to treat the prosecution's actions as objectionable and intervene on his own motion.  Accordingly, Appellant has not met his burden of establishing error, much less plain error.


III.  CONCLUSION

The decision of the United States Army Court of Criminal Appeals is affirmed.