# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
TOZZI, CELTNIEKS, and BURTON
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E1 JEREMIAH D. HILL**
**United States Army, Appellant**

ARMY 20150310

Headquarters, 7th Infantry Division
Andrew J. Glass, Military Judge
Colonel Robert F. Resnick, Staff Judge Advocate

For Appellant:  Lieutenant Colonel Melissa R. Covolesky, JA; Major Christopher D. Coleman, JA; Captain Matthew L. Jalandoni, JA (on brief); Major Christopher D. Coleman, JA; Captain Matthew L. Jalandoni, JA (on reply brief).

For Appellee:  Colonel Mark H. Sydenham, JA; Lieutenant Colonel A.G. Courie III, JA; Major Michael E. Korte, JA (on brief).

6 April 2017

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

TOZZI, Senior Judge:

An officer panel sitting as a general court-martial convicted appellant, contrary to his plea, of one specification of unpremeditated murder in violation of Article 118, Uniform Code of Military Justice, 10 U.S.C. § 918 (2012) [hereinafter UCMJ].  The panel sentenced appellant to a dishonorable discharge, confinement for forty-five years, and to forfeit all pay and allowances.  The convening authority approved the sentence as adjudged.  Appellant was credited with 577 days against the sentence to confinement.

This case is before us for review pursuant to Article 66, UCMJ.  Appellant raises three assignments of error, one of which merits discussion but no relief. Appellant personally raised matters pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), that we find, after due consideration, to be without merit.

**BACKGROUND**

Appellant was convicted of unpremeditated murder for stabbing Specialist (SPC) TG in the heart during an altercation involving two groups of soldiers. On the night of 4 October 2013, appellant left his barracks at Joint Base Lewis McChord (JBLM) with Private First Class (PFC) CJ. After visiting a club in Olympia, Washington, appellant and PFC CJ met up with three other soldiers they knew at a McDonald's restaurant. Appellant had been drinking throughout the evening, and PFC CJ testified appellant was "belligerently drunk[.]" This group of five soldiers then decided to take Private (PVT) AR-B's car to the Denny's restaurant adjacent to Club Latitude in Lakewood, Washington, to wait for the exodus of club patrons at closing time. Following this, the five soldiers proceeded to drive back toward JBLM on Pacific Highway South, with PVT AR-B at the wheel. At one point, the car stopped and appellant and PVT AR-B got out. Private AR-B testified that appellant chased and assaulted a man, hitting him "[j]ust once, then he ran off . . . ."

After getting back into the car, the group of five soldiers passed three pedestrians on the side of the road. The three pedestrians turned out to be three soldiers, including the victim, SPC TG. One of the occupants of the car yelled at the three pedestrians, and one of the pedestrians (SPC MB) yelled back, "So this is how we treat combat veterans now?" At that point, PVT AR-B pulled over in a gravel lot ahead of the three pedestrians. One of the occupants of the car (SPC AC) handed a knife to appellant. Appellant and three of the occupants of the vehicle then got out and began walking toward the three pedestrians. One of the pedestrians (SPC BJ) brandished a knife with a black blade. After a short verbal exchange the situation was seemingly diffused, as the groups realized they were confronting fellow soldiers. All present except appellant perceived there was no threat. At that point, appellant attacked SPC TG from the side or behind, putting SPC TG in a bear hug, stabbing him in the upper left chest with a force that completely incised his left, fifth rib (cutting the rib in two pieces) producing a 1½ inch incision in the front of SPC TG's heart. Specialist TG was dead within minutes.

Appellant testified when he approached the group of pedestrians two of the three individuals (SPC BJ and SPC TG) were brandishing knives. "[B]y the way they were holding them I could see the shiny part . . . I could just see a little shiny part reflect off the lighting[.]" Appellant testified SPC TG approached the group carrying a knife. Appellant testified, "I seen it like the whole time . . . ." Appellant then testified that he cut his hand reaching for SPC TG's knife. At that point appellant testified he stuck SPC TG with the knife he was carrying so SPC TG would not continue to use his knife against him. Two knives were later found affixed to SPC TG's belt. One was a folding knife on his left hip that was partially open, and one was a black buck knife secured in a sheath with its button in place. Notably, none of the other individuals at the scene saw SPC TG brandish a knife or make any threatening gestures.

Following the incident, appellant remained calm while all the others in the car panicked. Occupants of the car testified that appellant never mentioned self-defense on the ride back to JBLM. Upon returning to the barracks, when asked by the unit medic (SPC EK) how he cut his right hand appellant responded, "I stabbed a dude." When confronted with news accounts of a stabbing in Lakewood in which a man lost his life appellant replied, "I don't give a fuck, Joe." Appellant later attributed these remarks and reactions to his drinking heavily after the incident and "some of the things that were said I may have been so intoxicated that it actually turned into a cockiness."

## LAW AND DISCUSSION

*Prosecutorial Misconduct through Improper Government Argument*

Appellant asserts the trial counsel committed prosecutorial misconduct in closing argument by calling appellant's testimony a lie, by introducing facts not admitted in evidence, and by implying the defense did not present evidence to disprove the government's case. The Supreme Court defined prosecutorial misconduct as behavior by a prosecuting attorney that "overstep[s] the bounds of that propriety and fairness which should characterize the conduct of such an officer in the prosecution of a criminal offense . . . ." *Berger v. United States*, 295 U.S. 78, 84 (1935). The Court further stated that a prosecutor "may prosecute with earnestness and vigor . . . . But, while he may strike hard blows, he is not at liberty to strike foul ones." *Id.* at 88. "Trial counsel is entitled 'to argue the evidence of record, as well as all reasonable inferences fairly derived from such evidence.'" *United States v. Frey*, 73 M.J. 245, 248 (C.A.A.F. 2014) (quoting *United States v. Baer*, 53 M.J. 235, 237 (C.A.A.F. 2000)). However, trial counsel are prohibited from "unduly . . . inflam[ing] the passions or prejudices of the court members." *United States v. Marsh*, 70 M.J. 101, 102 (C.A.A.F. 2011) (quoting *United States v. Clifton*, 15 M.J. 26, 30 (C.M.A. 1983)); *see also* Rule for Courts-Martial [hereinafter R.C.M.] 919(b) discussion. We focus not "on words in isolation, but on the argument as 'viewed in context.'" *Baer*, 53 M.J. at 238 (quoting *United States v. Young*, 470 U.S. 1, 16 (1985)). We review improper arguments de novo. *Marsh*, 70 M.J. at 104.

If we find an argument improper, we must determine "whether it materially prejudiced the substantial rights of the accused." *Baer*, 53 M.J. at 237. We assess whether the misconduct impacted the accused's substantial rights by examining and balancing three factors: "(1) the severity of the misconduct, (2) the measures adopted to cure the misconduct, and (3) the weight of the evidence supporting the conviction." *United States v. Fletcher*, 62 M.J. 175, 184 (C.A.A.F. 2005). Indicators of the severity of the misconduct include: "(1) the raw numbers–the instances of misconduct as compared to the overall length of the argument[;] (2) whether the misconduct was confined to the trial counsel's rebuttal or spread

throughout the findings argument or the case as a whole; (3) the length of the trial; (4) the length of the panel's deliberations[;] and (5) whether the trial counsel abided by any rulings from the military judge." *Id.*

### A.     *Closing Argument – Characterization of Appellant's Testimony*

The trial counsel made a findings argument that spanned twelve pages of transcript, and a rebuttal argument that spanned an additional four pages of transcript. Defense counsel did not object to any portion of trial counsel's findings or rebuttal arguments. The military judge gave the members a standard instruction highlighting that the arguments of counsel are not evidence. During his closing argument the trial counsel stated:

> And then, finally, let's talk about what [appellant] told you happened yesterday. And let's look at the evidence, and when you look at it, you will understand that everything he told you, with few exceptions, is a lie.

Appellant asserts this portion of the argument disparaged appellant's credibility and crossed the line by calling the appellant a liar. "[C]alling the accused a liar is a dangerous practice that should be avoided." *Id.* at 182 (quoting *Clifton*, 15 M.J. at 30 n.5) (internal quotation marks omitted). "It is improper for a trial counsel to interject herself into the proceedings by expressing a 'personal belief or opinion as to the truth or falsity of any testimony or evidence.'" *Id.* at 179 (quoting ABA Standards, The Prosecution Function, § 5.8(b) (1971)).

The government asserts trial counsel's remarks were aimed at appellant's testimony rather than at appellant himself. Appellant's testimony that he saw two soldiers carrying knives with the shiny part reflecting off the light was contradicted by cross-examination that revealed the knives he would have seen had black blades incapable of giving a reflection. Further appellant claimed self-defense after he saw SPC TG with a knife, but the other five people present testified appellant was behind or beside SPC TG, negating the need for self-defense. Finally appellant made multiple statements after the event that were inconsistent with his claim of self-defense. For example, appellant never referenced self-defense to the other soldiers in the car after the stabbing. Private First Class CJ testified that appellant responded, "I don't give a fuck, Joe[,]" the following day to news he may have taken a life, and "we are going to beat this . . . . It is self-defense. I am going to say self-defense[.]" Appellant's actions and statements could be viewed as illustrating his self-defense claim was incorrect or even a lie.

The statement of the trial counsel refers to the evidence, and states that appellant's testimony "with few exceptions" was a lie. The plain language used by the trial counsel against the backdrop of conflicting testimony in the case leads to the conclusion that trial counsel was indeed commenting on the evidence and not

attacking appellant personally. This comment by the trial counsel in context was not improper and did not constitute plain error.

### B. Closing Argument – Arguing Facts Not in Evidence

Appellant asserts trial counsel impermissibly argued facts not in evidence in two ways. First, trial counsel impermissibly argued the unit medic did not see any alcohol in appellant's room and appellant did not appear intoxicated in the days following the incident. Second, trial counsel impermissibly stated appellant cut his right hand with his own knife when it slipped.

Regarding the absence of the presence of alcohol trial counsel argued:

> A point to note, [appellant] said this puffery and bravado was due to his intense level of intoxication. Remember, [SPC EK] went to [appellant]'s room twice and there was no mention of empty bottles of alcohol, beer cans, nothing. Two times in the 48 hour (sic) between the death—the murder, and when he was arrested, no alcohol was in the room, not in evidence.

Appellant asserts that since the military judge did not allow the government to call the unit medic as a rebuttal witness to state there was an absence of alcohol in appellant's room after the incident, trial counsel should not have been allowed to comment on the lack of alcohol since there was no reasonable inference to be drawn from the facts. The government was attempting to rebut appellant's assertion that his remarks and reactions following the incident were attributable to his heavy drinking. In ruling against the government regarding the rebuttal evidence the military judge did state, "Counsel, I'm not precluding you from arguing anything that you want to argue, that's legitimately suggested by the fact."

The government asserts arguing the absence of evidence is different from arguing facts not in evidence. We agree and do not find plain or obvious error in this portion of trial counsel's argument. Reasonable comment on inferences drawn from the evidence, or lack thereof in this particular case, are not impermissible. Trial counsel's comments reasonably relate to facts testified to by the unit medic, as he was performing his duties in treating appellant, and rebut facts elicited during appellant's testimony. The fact that the military judge did not allow SPC EK to testify as a rebuttal witness is not dispositive.

Appellant also asserts trial counsel impermissibly commented upon the source of injury to appellant's right hand during closing argument. Trial counsel stated:

> And this is how it went down, the government can show you, from the evidence, exactly how it played out. Every witness testified that [appellant] was to [SPC TG's] right and behind, with the exception of [appellant]. [Appellant] had this knife in his right hand, and he held it with his thumb along and aligned with his fingers, rather than wrapping his thumb around the blade like this. [Demonstrated]. How do we know this? Because as [appellant] approached [SPC TG] and slammed this knife into his chest from the right side, Doctor Clark told you that that knife completely incised the fifth rib of [SPC TG]; a bone. And when this knife would have hit that bone, it would hit resistance going in and then coming back out through the same bone. And hitting that resistance, with the blood that would be coming out of that wound, [appellant]'s hand slips. And as it slips, the meaty part of his thumb is cut by the slip, rendering the injury seen in Prosecution Exhibit 1, the photo taken by [SPC EK] on the morning—or the afternoon of the 5th of October 2013.

Appellant asserts this was impermissible argument because the theory of how appellant cut his hand was not supported by the evidence, especially since appellant testified that he held the knife in his left hand when he struck SPC TG. The government asserts there was plenty of evidence to support trial counsel's argument, to include: testimony about what side appellant approached SPC TG; the fact that SPC TG's knives were affixed to his belt after the incident; Doctor Clark's testimony regarding how the knife entered appellant's body; and appellant's statement about the source of his injury, "I stabbed a dude." We find trial counsel's statement regarding the source of appellant's wound was fair comment on the evidence presented and inferences drawn therefrom. This statement was permissible and did not constitute plain error.

### C.    Trial Counsel's Rebuttal Argument

Appellant asserts trial counsel implied the defense had to present evidence or disprove the government's case by improperly commenting on defense counsel's failure to cross-examine the government's witnesses or present other evidence showing inconsistencies in their testimony. The government asserts trial counsel's rebuttal comments were proper and invited responses to the defense counsel's attack upon the observations and credibility of the government's witnesses.

"[U]nder the 'invited response' or 'invited reply' doctrine, the prosecution is not prohibited from offering a comment that provides a fair response to claims made by the defense." *United States v. Lewis*, 69 M.J. 379, 384 (C.A.A.F. 2011) (quoting

6

*United States v. Carter*, 61 M.J. 30, 33 (C.A.A.F. 2005)). "When determining whether prosecutorial comment was improper, the statement 'must be examined in light of its context within the entire court-martial." *Id.* (quoting *Carter*, 61 M.J. at 33). "In the course of reviewing 'whether an appellant was deprived of a fair trial by such comments, the question an appellate court must resolve is whether, viewed within the context of the entire trial . . . defense counsel's comments clearly invited the reply.'" *Id.* (quoting *United States v. Gilley*, 56 M.J. 113, 121 (C.A.A.F. 2001)).

In closing argument on the merits, defense counsel stated:

> Let's talk about the guys in the car with [appellant]. It is laughable that those four came in here to testify to you about the truth of anything. Judge for yourselves how truthful they are. They were concerned with one thing: Themselves. The fact that the government can stand here in front of you and tell you to rely on their statements to convict someone of premeditated murder, the most serious charge under the Uniform Code of Military Justice, that's ridiculous.

In rebuttal, the trial counsel stated:

> Let's speak about the four guys in the car. Yes, they were not the most credible individuals. We get that. But two things: One, their testimony was generally the same, and if it had been so violently inconsistent from the statements they'd given the police, at the time of the events, the defense would have cross-examined them on it, most likely, and shown the inconsistencies; but they didn't. They didn't show the inconsistencies about placement. They didn't even reference the diagrams that each one of those witnesses, with the exception of [SPC AC], made. Why, because what they told the police, back in October 2013, was essentially exactly what they told you here the day before.

Defense counsel's closing argument, viewed within the context of the entire trial, clearly invited the trial counsel's reply cited above. The credibility of the government's witnesses was challenged in stark terms. The government's remarks in rebuttal dealing with the lack of potential inconsistencies in the statements of the government witnesses were rationally related to the credibility, or lack thereof, of those witnesses. Trial counsel's rebuttal argument was not impermissible within the context of this trial and the closing argument of defense counsel. The burden on the government to prove its case was not shifted to the defense as a result of trial counsel's comments. Trial counsel's comments did not constitute plain error.

### D. Plain Error and Prejudice

When no objection is made during trial, we review counsel's arguments for plain error, which occurs "when: (1) an error was committed; (2) the error was plain, clear, or obvious; and (3) the error resulted in material prejudice to an appellant's substantial rights." *United States v. Moran*, 65 M.J. 178, 181 (C.A.A.F. 2007) (citing *United States v. Powell*, 49 M.J. 460, 463-65 (C.A.A.F. 1998)).

Defense counsel did not object to either of trial counsel's arguments on the merits. Based upon the foregoing, we do not find plain error was committed in any aspect of trial counsel's findings or rebuttal arguments. Specifically, we do not find prosecutorial misconduct in the present case. Reviewing the alleged instances of improper argument together in context with trial counsel's entire argument, we are convinced the argument as a whole did not "seek unduly to inflame the passions or prejudices of the court members." *Clifton*, 15 M.J. at 30.

Assuming *arguendo* that any of trial counsel's comments in findings argument or rebuttal argument did constitute plain error, appellant was not prejudiced. Any misconduct by the trial counsel was not severe in the context of the entirety of this case. Trial counsel's findings argument consisted of twelve transcript pages, and his rebuttal covered four transcript pages. The comments at issue, while important to trial counsel's argument, did not constitute an inordinate portion of his argument. No corrective measures were taken by the military judge as he did not determine that any of trial counsel's statements constituted error. The comments at issue did span both the findings argument as well as the rebuttal argument. The trial on the merits was lengthy, spanning three days, and the members deliberated on findings for over ninety minutes. Trial counsel did not fail to abide by any rulings by the military judge during the findings and rebuttal argument. Finally, the weight of the evidence supporting appellant's conviction was strong. We find, assuming *arguendo* that plain error was committed, appellant did not suffer material prejudice to a substantial right.

### CONCLUSION

Upon consideration of the entire record, the findings of guilty and sentence are AFFIRMED.

Judge CELTNIEKS and Judge BURTON concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court