*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

————————

## UNITED STATES
Appellee

**v.**

## Daniel A. BENCH, Master Sergeant
United States Air Force, Appellant

### No. 21-0341
Crim. App. No. 39797

Argued March 1, 2021—Decided August 8, 2022

Military Judge: Charles G. Warren

For Appellant: *Captain Alexandra K. Fleszar* (argued); *Mark C. Bruegger,* Esq. (on brief).

For Appellee: *Major John P. Patera* (argued); *Colonel Naomi P. Dennis, Lieutenant Colonel Matthew J. Neil*, and *Mary Ellen Payne,* Esq. (on brief).

Judge HARDY delivered the opinion of the Court, in which Chief Judge OHLSON, Judge SPARKS, Judge MAGGS, and Senior Judge STUCKY joined.

————————

Judge HARDY delivered the opinion of the Court.

The Confrontation Clause of the Sixth Amendment requires that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted by the witnesses against him." U.S. Const. amend. VI. This case presents the question whether Appellant's right to be confronted by a complaining witness was violated when trial counsel misled Appellant's son by telling him that Appellant was not watching his son's remote live testimony. Because Appellant failed to preserve this issue at trial, the Court must decide whether any error was plain or obvious. We hold that it was not.

The confrontation right is a procedural guarantee that ensures that any testimony presented to a jury be tested through "the crucible of cross-examination." *Crawford v. Washington*, 541 U.S. 36, 61 (2004). The essential elements of the confrontation right require that the accused have an opportunity to cross-examine the witness, that the witness take an oath to tell the truth, and that the jury be able to observe

the witness's demeanor. *Maryland v. Craig*, 497 U.S. 836, 851 (1990). Each of these elements was present when Appellant's son testified remotely during the court-martial. Although the Court recognizes that trial counsel's misleading statements might have lessened the pressure Appellant's son felt to tell the truth, the essential elements of Appellant's confrontation right were still vindicated. Accordingly, we cannot say that it should have been clear or obvious to the military judge that the admission of EC's testimony would materially prejudice Appellant's Sixth Amendment rights. The decision of the United States Air Force Court of Criminal Appeals (AFCCA) is affirmed.

## I. Background

Based on his children's allegations, including those of his nine-year-old autistic son (EC), the Government charged Appellant with four offenses committed either against or in the presence of his children. The charges included three specifications of lewd acts with children in violation of Article 120b, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 920b (Supp. IV 2013–2017), and one specification of indecent conduct in violation of Article 134, UCMJ, 10 U.S.C. § 934 (2012 & Supp. IV 2013–2017).

Prior to Appellant's court-martial, the Government requested that EC be permitted to testify remotely by video teleconference from an area outside Appellant's presence. The Government argued that remote testimony was necessary "to protect [EC's] welfare because testimony in a courtroom setting, in light of him being autistic, will be particularly distressing, confusing and potentially embarrassing." Government Motion for Appropriate Relief: Remote Testimony of Child Witnesses E.B. and B.B. at 1, *United States v. Bench*, No. ACM 39797 (Apr. 2, 2019) (Appellate Exhibit VII).[1] The Government further asserted that EC would "be traumatized without remote testimony because of the physical and verbal indications of his fear of [Appellant] and that [Appellant] will find out he has told their 'secret.' " *Id.* After Appellant declined the military judge's invitation to

---

[1] At the time of Appellant's court-martial, EC's initials were EB. Like the AFCCA below and both parties in their briefs, we refer to EC by his current initials.

object to the Government's request, the military judge permitted EC to testify remotely.

Government trial counsel (TC), defense counsel (DC), and the special victim's counsel (SVC) for EC were present in the remote location during EC's testimony. Appellant remained in the courtroom, along with other counsel, the military judge, the panel, and the court reporter. Although a livestream screen was visible to EC in the remote location, a piece of paper had been placed over half the screen to block EC's view of the courtroom.

During EC's testimony, he repeatedly asked trial counsel questions about the remote testimony procedure, including specific questions about who could hear his testimony. Several of trial counsel's responses, although indisputably intended to ease EC's concerns and facilitate his testimony, were misleading or false. For example, as soon as EC began testifying, he became distracted by the paper on the livestream screen. EC asked why half the screen was covered, and trial counsel answered that it was to "make sure [EC] would be able to answer [the] questions, and not get distracted." Trial counsel and EC then engaged in the following exchange:

> [EC:] Are there people in there?
>
> [TC:] No, not so many.
>
> [EC:] What?
>
> [TC:] *Nope*, you just have to worry about us right here, okay? So you've got me, and [the SVC], and [the DC]. And so we're just—
>
> [EC:] —But are they going to—but are there going to be people—
>
> [TC:] —*No, just the three of us right here,* and we're going to ask you some questions, and then you'll be all done and you can go—go back outside, okay?

(Emphasis added.)

EC and trial counsel then engaged in an extended colloquy meant to ensure that EC knew the difference between the truth and a lie prior to EC taking the oath to tell the truth. After EC established that he understood the difference, EC

became distracted and again asked who could hear his testimony:

> [EC:] —What—the court can hear us?
>
> [TC:] *All you've got is the three people right here.*
>
> [EC:] But why is it—I thought there were court [sic] to hear us.
>
> [TC:] Well, who you've got to hear you right now—
>
> [EC:] We're just practicing?
>
> [TC:] *We're talking through you, yeah.* But we can hear you. And we just need you to. . . .
>
> [EC:] But why aren't we doing the court thing?
>
> [TC:] We are doing the court thing.
>
> [EC:] We are?
>
> [TC:] Yeah.

(Emphasis added.) EC continued to ask the trial counsel questions about what was happening, including the following exchange specifically about Appellant:

> [EC:] Is [Appellant] going to be standing right next to them?
>
> [TC:] *No.*
>
> [EC:] Where is he going to be standing?
>
> [TC:] *He's not in there. He's not there.* All you've got to do is answer the questions that we have, okay?
>
> [EC:] Um-huh.

(Emphasis added.) Defense counsel raised no objections to any of trial counsel's statements to EC.

After trial counsel's direct examination, defense counsel had a full opportunity to cross-examine EC. During the cross-examination, defense counsel impeached EC's testimony with inconsistent statements EC had previously made to law enforcement. Defense counsel made no attempt to inform EC that Appellant was in the courtroom and watching EC's live testimony or otherwise correct any of trial counsel's misstatements.

A panel of officer members convicted Appellant, contrary to his pleas, of two of the three specifications of sexual abuse of a child in violation of Article 120b, UCMJ, and the sole

specification of indecent conduct in violation of Article 134, UCMJ. The panel sentenced Appellant to twelve years of confinement, reduction to E-4, forfeiture of all pay and allowances, and a dishonorable discharge. The convening authority approved the sentence, and the AFCCA affirmed the sentence and findings without considering the issue presented because it was not raised on appeal.

We granted review to decide:

> Whether lying to a witness about Appellant's presence in the courtroom to secure testimony materially prejudices Appellant's Sixth Amendment right to confrontation.

*United States v. Bench*, 82 M.J. 112 (C.A.A.F. 2021) (order granting review).

## II. Waiver

Before we reach the question presented, we first address the Government's threshold argument that Appellant waived his Confrontation Clause claim. "When an appellant does not raise an objection to the admission of evidence at trial, [this Court] first must determine whether the appellant waived or forfeited the objection." *United States v. Jones*, 78 M.J. 37, 44 (C.A.A.F. 2018) (citing *United States v. Sweeney*, 70 M.J. 296, 303–04 (C.A.A.F. 2011)). Waiver usually occurs when there is an " 'intentional relinquishment or abandonment of a known right,' " *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)), but this Court has also recognized that waiver can occur by operation of law, *Jones*, 78 M.J. at 44 (citing *United States v. Hardy*, 77 M.J. 438, 441–42 (C.A.A.F. 2018)). When an appellant fails to raise a Confrontation Clause objection at trial, this Court "consider[s] the particular circumstances of [the] case to determine whether there was waiver," *id.* (citing *United States v. Harcrow*, 66 M.J. 154, 158 (C.A.A.F. 2008)), but "appl[ies] a presumption against finding a waiver of constitutional rights." *Id.* (citing *Sweeney*, 70 M.J. at 304).

The Government argues both that Appellant intentionally relinquished his Confrontation Clause claim and that the claim was waived by operation of law. With respect to the first assertion, we see nothing in the record that suggests anything more than an unintentional failure by Appellant to make a

timely assertion of his rights. The Government suggests that Appellant wanted EC to testify so that the panel could observe his erratic demeanor, and thus made an intentional, strategic decision not to raise the Confrontation Clause claim. No evidence supports this assertion. Because the Government's theory does not come close to overcoming our presumption against finding waiver of constitutional rights, we conclude that Appellant did not intentionally abandon his claim.

The Government more reasonably argues that Appellant waived this issue by operation of law under the plain language of Rule for Courts-Martial (R.C.M.) 905(e) (2016 ed.). That rule provides that such claims "must be raised before the court-martial adjourned for that case and, unless otherwise provided in [the *Manual for Courts-Martial, United States*], failure to do so shall constitute waiver." R.C.M. 905(e). We acknowledge that the language of the rule would appear to be dispositive on this point in the Government's favor, but as this Court has recognized in the past, there has long been disagreement in our own precedent about whether the word "waive[d]" in R.C.M. 905(e) actually means "waived" (as defined by the Supreme Court in *Olano*, 507 U.S. at 733), or instead means "forfeited" (the failure to preserve an issue by timely objection). *See Hardy*, 77 M.J. at 441–42 (noting the disagreement in this Court's precedents); *id.* at 445 (Ohlson, J., dissenting) (same). Two of our more recent precedents lead us to conclude that regardless how one interprets the word "waive[d]" in R.C.M. 905(e), that rule does not extinguish a claim when there has been plain error.

First, in *United States v. Maynard*, 66 M.J. 242, 243–44 (C.A.A.F. 2008), the Court reviewed a case where the appellant failed to raise any objection at his court-martial to the allegedly erroneous admission of aggravation evidence by the military judge. Expressly citing R.C.M. 905(e), the Court stated: "When the defense fails to object to admission of specific evidence, the issue is waived, *absent plain error*," and then stated and applied the traditional three-factor test for plain error. *Id.* at 244 (emphasis added).

More recently, in *Jones*, 78 M.J. at 39–40, the Court reviewed a case where the appellant failed to raise a Confrontation Clause claim at trial and instead raised it for the first time on appeal. After noting that, as a threshold matter, the

Court needed to determine whether the claim was forfeited or waived, the Court recognized that waiver could occur by operation of law even in the absence of intentional relinquishment. *Id*. at 44. Despite the existence of R.C.M. 905(e), the Court concluded: "We do not see any waiver by operation of law here." *Id*. After also finding no intentional relinquishment of the appellant's claim, the Court determined that the claim had been forfeited and applied plain error review. *Id*.

These two cases do not necessarily resolve the debate about the meaning of the word "waive[d]" in R.C.M. 905(e) with respect to all claims and all cases. But we agree that in this case, R.C.M. 905(e) does not extinguish, by operation of law, Appellant's ability to argue for the first time on appeal that the military judge committed plain or obvious error by admitting EC's testimony. Accordingly, we consider the merits of Appellant's Confrontation Clause claim.

### III. Confrontation Clause

Appellant argues that his Sixth Amendment right to be confronted by the witnesses testifying against him was infringed when trial counsel misled EC by telling him that Appellant was not watching his remotely recorded testimony. Because Appellant failed to raise this objection at trial and the objection was not waived by operation of law, we test for plain error. *Jones*, 78 M.J. at 44. Plain error occurs where "(1) there is error, (2) the error was plain or obvious, and (3) the error results in material prejudice to a substantial right of the accused." *United States v. Fletcher*, 62 M.J. 175, 179 (C.A.A.F. 2005) (citing *United States v. Rodriguez*, 60 M.J. 87, 88 (C.A.A.F. 2004)).

The Sixth Amendment provides, in relevant part, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted by the witnesses against him." U.S. Const. amend. VI. "[T]he [Confrontation] Clause's ultimate goal is to ensure reliability of evidence, but it is a procedural rather than a substantive guarantee. It commands, not that evidence be reliable, but that reliability be assessed in a particular manner: by testing in the crucible of cross-examination." *Crawford*, 541 U.S. at 61. Although the procedural requirements have shifted over time, the Supreme Court has consist-

ently held that "the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to probe and expose . . . infirmities [in a witness's testimony] through cross-examination." *Delaware v. Fensterer*, 474 U.S. 15, 22 (1985). A full and fair opportunity to cross-examine generally "guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact," *Coy v. Iowa*, 487 U.S. 1012, 1016 (1988) (citing *Kentucky v. Stincer*, 482 U.S. 730, 748 (1987) (Marshall, J., dissenting)), because, as the Supreme Court reasoned, "[i]t is always more difficult to tell a lie about a person to his face than behind his back," *id.* at 1019 (internal quotation marks omitted).

Two years after the Supreme Court decided *Coy*, it carved out an exception to the general rule requiring face-to-face confrontation. In *Craig* the Supreme Court permitted a child witness to testify via closed-circuit television, without any face-to-face interaction with the accused. 497 U.S. at 849–50. The Supreme Court held that although there is a "*preference* for face-to-face confrontation at trial [this preference] must occasionally give way to considerations of public policy and the necessities of the case." *Id.* (internal quotation marks omitted) (citations omitted). The Supreme Court ultimately held that the accused's confrontation right was preserved even though the child testified remotely because "all of the other elements of the confrontation right" including "oath, cross-examination, and observation of the witness'[s] demeanor" were present. *Id.* at 851.

Although this Court has recognized tension between the Supreme Court's decisions in *Crawford* and *Craig*, *see United States v. Pack*, 65 M.J. 381, 384 (C.A.A.F. 2007) ("the *Crawford* opinion itself contains statements that are difficult to reconcile with certain other statements in the *Craig* opinion"), we have also been unequivocal that we consider *Craig* to be good law. As we have said before, "*Craig* continues to control the questions of whether, when, and how, remote testimony by a child witness in a criminal trial is constitutional." *Id.* at 385. We therefore reject Appellant's suggestion—raised half-heartedly in his brief—that the military judge erred merely by approving the Government's unopposed request for EC to testify remotely.

As stated in the question presented, the only issue before us is whether Government trial counsel prejudiced Appellant's Confrontation Clause right by telling EC that Appellant was not listening to EC's testimony. According to Appellant, the answer is yes because "[a]t a minimum, the confrontation right requires that a witness evince some minimal understanding that his or her testimony is being given against the accused in an adversarial court proceeding." Brief for Appellant at 25, *United States v. Bench*, No. 21-0341 (C.A.A.F. Dec. 30, 2021). Put another way, Appellant argues that trial counsel's false statements unconstitutionally diminished EC's truthfulness because "[i]t is always more difficult to tell a lie about a person to his face than behind his back." *Coy*, 487 U.S. at 1019 (internal quotation marks omitted).

To determine whether the military judge committed plain error, we focus first on the second prong of the test: whether the alleged error would have been plain or obvious. Appellant cites no precedent from any court holding that the Sixth Amendment confrontation right requires a child testifying remotely to be aware that the defendant is viewing their testimony. This appears to be a matter of first impression not just in this Court but in any court. The absence of any controlling precedent strongly undermines Appellant's argument that the military judge committed plain or obvious error by admitting EC's testimony. *See United States v. Lange*, 862 F.3d 1290, 1296 (11th Cir. 2017) ("there can be no plain error where there is no precedent from the Supreme Court or this Court directly resolving it" (internal quotation marks omitted) (citation omitted)); *see also United States v. Akbar*, 74 M.J. 364, 398–99 (C.A.A.F. 2015) (explaining that absence of case law "is not dispositive" for plain error analysis but "does tend to show that" there was no "plainly or obviously" error).

Appellant's argument is further undermined by the fact that "all of the other elements of the confrontation right" including "oath, cross-examination, and observation of the witness' demeanor" were satisfied. *Craig*, 497 U.S. at 851. First, EC properly took an oath to tell the truth before testifying in the remote proceeding. Military Rule of Evidence (M.R.E.) 603 requires that, "[b]efore testifying, a witness must give an oath or affirmation to testify truthfully. It must be in a form designed to impress that duty on the witness'[s] conscience."

Per this Court's precedent, M.R.E. 603 "requires no special verbal formula, but instead requires that the oath be meaningful to the witness, including a child witness, and impress upon the witness the duty to tell the truth." *United States v. Washington*, 63 M.J. 418, 424 (C.A.A.F. 2006).

Although EC had some difficulty keeping focused during the initial colloquy with trial counsel, he ultimately established that he understood the difference between telling the truth and lying, and subsequently gave a verbal acknowledgment that he would tell the truth. The trial counsel then verified for the record that EC gave an affirmative response and defense counsel did not object. We are satisfied that EC understood the seriousness of the matter and the expectation that he tell the truth. *Craig*, 497 U.S. at 845–46 (citing *California v. Green*, 399 U.S. 149, 158 (1970)).

Second, EC was subject to unrestricted cross-examination by Appellant's counsel, a fact that Appellant concedes in his brief. Brief for Appellant at 43, *Bench*, No. 21-0341. ("Appellant does not dispute that his counsel had the opportunity to question [EC]."). Appellant "also acknowledges that some of the infirmities in [EC's] testimony were exposed through . . . questioning, which can be an indicator that the Confrontation Clause is satisfied." *Id*. (citing *Fensterer,* 474 U.S. at 22). Despite these admissions, Appellant argues that he was prejudiced by trial counsel's lie because EC's testimony was unreliable. We disagree. Appellant received the opportunity to subject EC's testimony to the "crucible of cross-examination," *Crawford*, 541 U.S. at 61, which the Supreme Court has called "the greatest legal engine ever invented for the discovery of truth." *Craig*, 497 U.S. at 845–46 (internal quotation marks omitted) (citations omitted).

Finally, it is undisputed that the panel was able to observe EC's demeanor as he testified and assess his credibility. *Id*. Appellant admits this but argues that EC's mistaken belief that Appellant was not watching denied the panel the opportunity to observe one critical thing—EC's demeanor when actually confronting Appellant. Brief for Appellant at 44, *Bench,* No. 21-0341. We disagree that this clearly prejudiced Appellant's procedural confrontation right. Appellant cites no precedent supporting his argument that this one aspect of a witness's demeanor is what matters for Sixth Amendment

purposes. We have no reason not to conclude that Appellant's confrontation right was satisfied given that the panel was able to " 'look at [EC], and judge by his demeanor upon the stand and the manner in which he [gave] his testimony whether he is worthy of belief.' " *Green*, 399 U.S. at 158 (quoting *Mattox v. United States*, 156 U.S. 237, 242–43 (1895)).

The Supreme Court, and this Court, have made clear that remote testimony does not infringe on an accused's confrontation right if it is necessary as a matter of public policy. *Craig*, 497 U.S. at 849. The Confrontation Clause protects a procedural right that seeks reliability "by testing in the crucible of cross-examination." *Crawford*, 541 U.S. at 61. That right is satisfied when the individual testifying takes an oath and is subject to cross-examination that is observed by the panel. *Craig*, 497 U.S. at 851. Because all those elements were present here, we cannot say that it should have been plain or obvious to the military judge that trial counsel's misstatements would prejudice Appellant's right to confrontation. Because Appellant cannot establish the second prong of the plain error test, we need not consider the first or third prongs.

## IV. Judgment

Whether the Sixth Amendment is violated when a counsel misleads a witness who is testifying remotely about the accused's presence is an open question with no clear and obvious answer in the military justice system. As such, Appellant cannot establish that the military judge's admission of EC's testimony was plainly erroneous. The decision of the United States Air Force Court of Criminal Appeals is affirmed.